IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN HAWLEY,

    Plaintiff,

v.                                                                   CV 18-0489 JHR/SCY

FARM BUREAU PROPERTY &
CASUALTY INSURANCE COMPANY,

    Defendant.

# MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Farm Bureau Property & Casualty Insurance Company's Motion for Partial Summary Judgment [Doc. 17], filed November 2, 2018, in which it requests that the Court grant summary judgment in its favor and dismiss Plaintiff John Hawley's Complaint with prejudice. [*See id.*, p. 17].[1] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned Magistrate Judge to conduct dispositive proceedings in this matter, including entry of final judgment. [Docs. 6, 7, 8]. Having considered the relevant law and the parties' submissions, the Court grants Farm Bureau's Motion.

## I) INTRODUCTION

Plaintiff Hawley was injured in an automobile collision with an underinsured tortfeasor. After receiving the full limits of the tortfeasor's liability coverage, Hawley turned to his own insurer, Defendant Farm Bureau, to recover underinsured motorist benefits. Having insured six vehicles with Farm Bureau, Hawley sought to stack his UM/UIM coverage. However, prior to the

---

[1] The only surviving claim is for breach of contract (Count IV). [Doc. 17, at *2; see Docs. 1-1, p. 10].

1

accident, he had rejected intra-policy stacking of his UM/UIM coverage in a written document. As such, Farm Bureau only paid Hawley the undisputed coverage, the value of one of his vehicles' UM/UIM coverage.

Hawley now argues that his rejection of stacked UM/UIM coverage was invalid as a matter of New Mexico law, and asks this Court to reform his policy to provide for coverage he rejected and for which he paid no premium. The Court denies his claim as a matter of law. As the Court reads New Mexico law, Hawley was free to reject UM/UIM coverage, and, because UM/UIM coverage is not tied to a particular vehicle, Farm Bureau's all-or-nothing offer of stacked coverage was permissible. Farm Bureau's Motion will be granted.

**II)    ISSUES**

At issue is whether Defendant Farm Bureau failed to properly inform Hawley of his full options for stacking UM/UIM coverage under his policy. That question raises another: whether Farm Bureau was required to offer a "per vehicle" premium cost for stacking UM/UIM coverage.

**III)    UNDISPUTED MATERIAL FACTS**

The relevant policy covered Plaintiff Hawley's October 27, 2015, accident, and was issued to Hawley and his wife Amy. [Doc. 17, p. 4, ¶ 1, p. 8, ¶¶ 22-24; Doc. 18, p. 2, ¶ 1, p. 4, ¶¶ 22-24]. The Policy provided bodily injury liability coverage of $100,000.00 per person and $300,000.00 per occurrence for the Hawleys' six vehicles and corresponding UM/UIM bodily injury coverage equal to the liability limits. [Doc. 17, p. 4, ¶¶ 2-3; Doc. 18, p. 2, ¶¶ 2-3]. However, pursuant to Endorsement PKNM.EV009.0412, completed and signed by Hawley on January 4, 2013, Hawley rejected stacked UM/UIM coverage. [Doc. 17, pp. 5-7, ¶¶ 6-17; Doc. 18, p. 3, ¶¶ 6-17].

After his accident with the tortfeasor, Hawley received the bodily injury liability limits of $25,000.00 afforded by the tortfeasor's policy with State Farm. [Doc. 17, p. 8, ¶ 23; Doc. 18, p. 4,

¶ 23]. Farm Bureau paid Hawley the remaining undisputed non-stacked UM coverage limits of $75,000.00 available under the Policy after applying an offset for the $25,000.00 paid by State Farm. [Doc. 17, p. 8, ¶ 24; Doc. 18, p. 4, ¶ 24]. At issue is whether Hawley's rejection of stacked UM/UIM coverage was invalid as a matter of law, entitling him to judicial reformation of his policy to provide a total UIM limit of up to $600,000.00. [Doc. 17, p. 8, ¶ 25; Doc. 18, p. 4, ¶ 25].

Pertinent here, the Selection/Rejection Form employed by Farm Bureau provided the costs of non-stacked coverage, side-by-side, to the costs of stacked UM/UIM coverage. [Doc. 17, p. 6, ¶ 13; Doc. 18, p. 3, ¶ 13]. [*See also* Doc. 17-1, p. 1]:

**Uninsured And Underinsured Motor Vehicle Coverage**
**Stacking Rejection/Coverage Selection**

JOHN HAWLEY                   7795193
Applicant/Insured             Policy Number

PLEASE COMPLETE BOTH SECTIONS I AND II OF THIS FORM. FAILURE TO COMPLETE AND SIGN THIS FORM COULD RESULT IN INCREASED PREMIUMS ON YOUR POLICY.

Coverage is generally described here. Your policy provides a complete description of your coverage and limitations.

**SECTION I**

**UNINSURED/UNDERINSURED MOTORISTS (UM) COVERAGE SELECTION**

Uninsured/Underinsured Motorist (UM) coverage pays for bodily injury and property damage losses to you and your passengers as a result of an accident with a driver who has either no liability protection and is legally responsible for the injuries or damages, or does not have enough protection to pay the full amount that the injured person is legally entitled to recover as damages. Also included are the bodily injury (BI) and property damage (PD) losses caused by a hit-and-run vehicle whose owner and driver cannot be identified.

You have the right to purchase UM coverage as follows:
1) Select a UM coverage limit equal to the coverage limit you selected for BI and PD liability (Liability coverage)
2) REJECT UM coverage equal to your Liability coverage limit and instead select a lower UM coverage limit
3) REJECT UM coverage completely

The information below reflects the Liability coverage limit you selected, the resulting UM coverage limit options available to you, and your decision regarding the UM coverage limit, if any, you have selected:

Liability coverage limit you selected: $100,000 each person / $300,000 each accident

Uninsured Motorist Property Damage limit you selected: $300,000 each accident

Please select the desired UM coverage limit below:

| Available UM Coverage Limit (cannot exceed Liability limit): | Non-stacked UM Comparable Policy Premium* | Stacked UM Comparable Policy Premium* |
|---|---|---|
| ☐ $0 – REJECT UM coverage completely: | $ 0 | $ 0 |
| ☐ $25,000 per person/$50,000 per accident | $ 137.12 | $ 348.24 |
| ☐ $50,000 per person/$100,000 per accident | $ 198.80 | $ 542.72 |
| ☒ $100,000 per person/$300,000 per accident | $ 274.16 | $ 726.66 |

* The selection of Non-stacked UM verses Stacked UM is made on the next page.
(The premiums shown above are UM premiums only)

3

Notably, the policy premiums presented on the Selection/Rejection form were either for Non-stacked UM coverage or Stacked UM coverage; they did not break down nor offer stacking on a per-vehicle basis. [Doc. 17-1, p. 1].

The next page of the form contains representations that Hawley agreed to, as well as Section II, which permitted him to request or reject intra-policy stacking:

> **Representations:**
> 1) UM coverage has been explained to me. I have selected the UM coverage limit as indicated above.
> 2) I understand and acknowledge that if the UM coverage limit I selected is less than the Liability coverage limit I selected, I HAVE REJECTED SOME AMOUNT OF UM COVERAGE available to me.
> 3) I also understand and acknowledge that my coverage selection or rejection will apply to all future renewals, continuations, and changes in the policy, unless I notify the Company otherwise in writing. A copy of this selection/rejection shall be considered as effective and valid as the original. The original signed selection/rejection will remain on file with the Company. Upon my request, the Company will send me a copy.
> 4) I have the authority to bind all of the insureds, including named insureds, under the policy to all the choices I've made with regard to the policy, including the UM selection or rejection I have made herein.
>
> _____   1/4/13
> Signature of Applicant/Named Insured    Date
>
> **SECTION II**
>
> **INTRA-POLICY STACKED UNINSURED/UNDERINSURED MOTORISTS (UM) COVERAGE REJECTION**
>
> You have the option to reject Intra-Policy Stacked coverage, and instead, purchase Non-Stacked UM Coverage. Intra-Policy Stacked UM Coverage refers to combining the UM coverage limits, for you and members of your household, for each vehicle specifically insured for UM coverage under the policy.
>
> **PLEASE SELECT ONE OF THE TWO OPTIONS BELOW:**
>
> ☐ I request Intra-Policy Stacked UM Coverage
>
> ☒ I reject Intra-Policy Stacked UM Coverage and, instead, select Non-Stacked UM Coverage
>
> I understand and acknowledge that my coverage selection will apply to all future renewals, continuations and changes in the policy, unless I notify the Company otherwise in writing. A copy of this selection/rejection shall be considered as effective and valid as the original. The original signed selection/rejection will remain on file with the Company. Upon my request, the Company will send me a copy.
>
> I have the authority to bind all the insureds, including named insureds, under the policy to all choices I've made with regard to the policy, including the stacking selection/rejection I have made herein.
>
> _____   1/4/13
> Signature of Applicant/Named Insured    Date
>
> JOHN HAWLEY
> Printed Name of Applicant/Named Insured

[Doc 17-1, p. 2; Doc. 17, pp. 6-7, ¶ 16; Doc. 18, p. 3, ¶ 16]. As shown above, Hawley checked the second box, rejecting Intra-Policy Stacked UM Coverage. [Doc. 17, p. 7, ¶ 17; Doc. 18, p. 3, ¶

4

17]. The primary question presented is whether Farm Bureau's Selection/Rejection form complied with New Mexico law so that it prevents stacked UM/UIM coverages in this case.

**IV)** **LEGAL STANDARDS**

In this diversity action, the Court applies the substantive law of New Mexico to the legal questions at issue. *See Patterson v. Powder Monarch, LLC*, 926 F.3d 633, 637 (10th Cir. 2019). Thus, the Court must follow the most recent decisions of New Mexico's Supreme Court. *Id.* Where no controlling decision exists, the Court must attempt to predict what the New Mexico Supreme Court would do, "seeking guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Id.* (quoting *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007)). The Court is also bound by the Tenth Circuit's "own prior interpretations of state law … unless an intervening decision of the state's highest court has resolved the issue." *Id.* (quoting *Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1295 (10th Cir. 2010)).

Under Federal Rule of Civil Procedure 56(a): "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016). Only material factual disputes preclude the entry of summary judgment. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

## V) APPLICABLE LAW

The parties direct the Court to *Montano v. Allstate Indemnity Co.*, 2004-NMSC-020, 135 N.M. 681, 92 P.3d 1255, as the most relevant decision of the New Mexico Supreme Court on the issues at bar. [*See* Doc. 17, pp. 9-13; Doc. 18, pp. 6-12]. *Montano*, however, stands in a landscape of statutory, regulatory, and common law rules that requires some discussion.

**General Structure of New Mexico Motor Vehicle Insurance Law**

New Mexico requires all motor vehicle, unless exempted, to have liability insurance or other acceptance self-insurance. NMSA 1978, § 66-5-205(A) and (B) (2013). A minimum level of coverage is set by statute, NMSA 1978, § 66-5-208(A – C) (1983), currently $25,000 for bodily injury to or death of a person and $50,000 for all persons plus $10,000 for property damage caused in any one accident. New Mexico recognizes, however, that some negligent drivers will not comply and will not have the mandatory liability insurance and others will meet the minimum requirements but will not have enough liability insurance to cover all the damages they cause. To address those problems, New Mexico requires that insurers offer, to those who purchase motor vehicle liability insurance, a separate coverage to provide at least the same benefit as the mandatory coverage when the tortfeasor's insurance is lacking.

The specifics of New Mexico's uninsured motorist/underinsured motorist (UM/UIM) coverage scheme are important to its application. First, New Mexico requires that UM/UIM coverage be available with every motor vehicle liability policy, § 66-5-208(A, B), but allows the purchaser to reject the coverage, § 66-5-208(C). In other words, New Mexico does not mandate that UM/UIM coverage be purchased, but that it be offered so that every purchaser of motor vehicle liability insurance has a real opportunity to obtain that additional coverage. Second, distinct from most automobile liability coverage, UM/UIM coverage generally is not tied to any specific motor

vehicle but goes with the person, even when occupying a vehicle not on the same policy, or occupying no vehicle at the time of injury by a negligent driver. *Chavez v. State Farm Mut. Auto. Ins. Co.*, 1975-NMSC-011, ¶ 11, 87 N.M. 327, 330, 533 P.2d 100, 103; *Lopez v. Foundation Reserve Ins. Co.*, 1982-NMSC-034, ¶ 8, 98 N.M. 166, 169, 646 P.2d 1230, 1233. An insurer must offer UM/UIM coverage equivalent to the minimum mandatory liability coverage. NMSA 1978, § 66-5-301 (1983); § 66-5-215(A) (1983). Third, an insurer must also offer coverage equivalent in amount to the purchaser's own liability coverage limit (if greater than the mandatory minimum). § 66-5-301(A). In addition to those mandatory requirements upon the insurer, the UM/UIM statute contemplates that the insurer and insured can agree to UM/UIM coverage in an intermediate amount, greater than the minimum but less than the maximum. *Id.* (Stating that UM/UIM policies may provide "such higher limits as may be desired by the insured, but up to the limits" (of the insured's liability coverage)).

Public policy considerations support and inform New Mexico's statutory structure. The purpose of UM/UIM coverage is to protect persons who are injured by negligent drivers from the consequences of the tortfeasor's failure to have liability insurance. *Chavez*, 1975-NMSC-011, ¶ 7, 87 N.M. at 329, 533 P.2d at 102. Because New Mexico's UM/UIM statute is remedial, it must be liberally construed to accomplish its purpose, and any limitations of the statute (*i.e.*, insured must be legally entitled to damages and negligent driver must be "uninsured") must be construed strictly. *See Schmick v. State Farm Mut. Auto. Ins. Co.*, 1985-NMSC-073, ¶ 11, 103 N.M. 216, 219, 704 P.2d 1092, 1095; *see also Foundation Reserve v. Marin*, 1990-NMSC-022, ¶ 9, 109 N.M. 533, 535, 787 P.2d 452, 454 (overruling *Willey v. Farmers Ins. Group*, 1974-NMSC-054, 86 N.M. 325, 523 P.2d 1351, for misinterpreting the definition of an "uninsured" driver). Moreover, while insurance policies are contracts and interpreted by contract principles, *Thompson v. Occidental*

*Life Ins. Co. v. Cal.*, 1977-NMCA-071, ¶ 4, 90 N.M. 620, 621, 567 P.2d 62, 63, interpretation must be compatible with public policies expressed by applicable statutes and regulations. *Romero v. Dairyland Ins. Co.*, 1990-NMSC-111, ¶ 17, 111 N.M. 154, 159, 803 P.2d 243, 248. Ambiguities in UM/UIM policy provisions are construed by the court against the insurer and in favor of the reasonable expectations of the insured. *Rodriguez v. Windsor*, 1994-NMSC-075, ¶ 12, 118 N.M. 127, 130, 879 P.2d 759, 762; *see also Lopez v. Foundation Reserve Inx. Co., Inc.*, 1982-NMSC-034, ¶ 16, 98 N.M. 166, 170, 646 P.2d 1230, 1230 ("Another reason for intra-policy stacking is that if fulfills the reasonable expectations of the insured." (citations omitted)).

**New Mexico Courts Favor but Do Not Always Require "Stacking" of Motor Vehicle Insurance Coverages**

"Stacking" is the aggregation of coverages for multiple vehicles insured under a single policy. *State Farm Mut. Auto. Ins. Co. v. Safeco Ins. Co.*, 2013-NMSC-006, ¶ 8, 298 P.3d 452 (internal quotation marks and citation omitted). New Mexico common law allows courts to reform policies to impose stacking under certain circumstances. In the UM/UIM context, stacking is possible and sometimes even mandatory when it is not clear that only a single UM/UIM coverage exists. In *Montano*, a landmark case of UM/UIM stacking, the New Mexico Supreme Court invalidated an express anti-stacking clause that purported to limit stacking to two UM coverages, even though the policy covered four vehicles, where the policy was ambiguous about whether the insured truly paid a single premium for a single coverage. *See* 2004-NMSC-020, ¶¶ 23-27. The Court emphasized it has "always understood [judicial] stacking to be the remedy for an ambiguous contract or the charging of multiple premiums." *Id.* at ¶ 9. Tying UM/UIM premiums to specific automobiles creates ambiguity because of "the simple fact that UM personal injury coverage does not follow the automobile." *Id.* This untethered nature is important to the consumer so that "general

UM coverage also insures one against bodily injury while a pedestrian or a passenger in someone else's vehicle." *Id.*

The *Montano* court did not mandate stacking in every case because that "would reduce the freedom of the parties to contract for less coverage and thus their freedom to decide how much coverage they can afford." *Id.* at ¶ 16.

> [I]t may be possible to give effect to a *truly* unambiguous antistacking clause, provided it plainly notifies the insured that only one premium has been charged for one insurance coverage, that the coverage provides personal accident insurance that cannot be stacked regardless of the number of vehicles covered by the policy, and that the insured should bear this feature in mind when purchasing insurance.

*Id.*, ¶ 14 (quoting *Rodriguez,* 1994-NMSC-075, ¶ 22, 879 P.2d at 765 (emphasis in original)). The *Montano* court then "chart[ed] a new course," *id.* at ¶ 17, concluding that "[i]n order to clarify and make explicit the intention of the parties,"

> the solution is to treat stacked coverage as extra coverage for which the parties have contracted, and to which the insured is entitled by default, unless the insurance company undertakes the burden of obtaining a separate, comprehensible, and written disclaimer of stacking. Under this rationale those who want stacked coverage pay for it, and those who don't want it don't pay for it.

*Id.* at ¶ 18 (quoting *U.S. Fidelity & Guarantee Co. v. Ferguson*, 698 So.2d 77, 84 (Miss. 1997) (Dan Lee, C.J., specially concurring)).

**UM/UIM Coverage Rejection Can Be Effective If Done Properly**

An insured can reject some of or all the UM/UIM coverage that must be offered, NMSA § 66-5-301(C), but the rejection must meet certain standards or will be set aside with the court reforming the policy to provide the full offered amount. *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 30, 149 N.M. 162, 245 P.3d 1214, 1233. A rejection of UM/UIM coverage must be written and "must be endorsed, attached, stamped or otherwise made a part of the policy." 13.12.3.9 NMAC.

9

A choice of any UM/UIM coverage amount less than the equivalent of the policy's liability limits is considered a rejection of the higher amount and must comply with all legal requirements for rejection. *Romero v. Progressive Northwestern Ins. Co.*, 2010-NMCA-024, ¶ 24, 148 N.M. 97, 102, 230 P.3d 844, 849; *see also* citations in *Progressive Northwestern Ins. Co. v. Weed Warrior Services*, 2010-NMSC-050, ¶ 1, 149 N.M. 157, 158, 245 P.3d 1209, 1210-11. Once an insured properly rejects UM/UIM coverage, the insurer can assume rejection for all future renewals unless the insured later requests UM/UIM coverage in writing. NMSA 1978, § 66-5-301(C) (1983).

Premium quotes are constituents of a "meaningful offer." An offer of coverage is not meaningful unless it includes a premium quote for each offered coverage level. *See Jordan*, 2010-NMSC-051; *see also Whelan v. State Farm Mut. Auto. Inc. Co.*, 2014-NMSC-021, 329 P.3d 646. An insurer must provide a premium quote for each level of stacking that it offers, *Ullman v. Safeway Insurance Company*, 2017-NMCA-071, ¶ 45, 404 P.3d 434, 447, *cert. granted* (Aug. 24, 2017), although it need not make an express offer of every possible stacking combination. *See Jaramillo v. Government Employees Ins. Co.*, 573 F. App'x 733 (10th Cir. 2014).

To honor the legislative intent of a "meaningful offer" of coverage and a knowing and intelligent decision to forego it, *Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 16, 147 N.M. 678, 684, 228 P.3d 462, 468, "some positive act" is required for a valid rejection of the maximum UM/UIM coverage under New Mexico law. *Id.* at ¶ 15. New Mexico's implementing regulation for rejection of UM/UIM coverage requires that every rejection be written and signed, that it be made a part of the insurance policy, and that a notification of the rejection be delivered to the insured. NMAC 13.12.1.3.9. The purpose of the incorporation and delivery requirements is to provide the insured the opportunity to reflect upon and reconsider the choice later. *Romero*, 199-NMSC-111, ¶ 9; *see also Kaiser v. DeCarrera*, 1996-NMSC-050, ¶ 14, 122 N.M. 221, 224, 923

P.2d 588, 591. The requirement that a rejection of UM/UIM coverage must be signed has been construed to mean that a signature must accompany the *act* of rejection, although the specific *evidence* of rejection can be unsigned. *Marckstadt*, 2010-NMSC-001, ¶ 4. The notification of rejection need not be a copy of the original rejection document. *Id*.

### The *Montano* Illustration Does Not Mandate a Specific UM/UIM Coverage Structure

To illustrate how its holding could apply to future cases, the *Montano* court imagined a scenario where the insurer offered four UM options:

> [I]n a multiple-vehicle policy insuring three cars, the insurer shall declare the premium charge for each of the three UM coverages and allow the insured to reject, in writing, all or some of the offered coverages. Thus, hypothetically, in the case of a $25,000 policy, if the premium for one UM coverage is $65, two coverages is an additional $60, and three coverages $57 more, the insured who paid all three (for a total premium of $182) would be covered up to $75,000 in UM bodily injury coverage. However, the insured may reject, in writing, the third available coverage and pay $125 for $50,000 of UM coverage; or the insured may reject, in writing, the second and third coverages and pay $65 for $25,000 of UM coverage; or the insured may reject all three UM coverages. **In any event, the coverage would not depend on which vehicle, if any, was occupied at the time of the injury.** Thus the insured's expectations will be clear, and an insured will only receive what he or she has paid for.

*Montano*, 2004-NMSC-020, ¶ 20 (emphasis added).

The "shall declare" language of the *Montano* illustration is not a holding of the case that a UM premium quote must be offered for each insured vehicle on the policy or else stacking will be imposed. That interpretation defies the principle that UM/UIM insurance coverage is not tied to a particular vehicle, *id.* at ¶ 9, as well as the clear holding of *Montano* that anti-stacking clauses are not prohibited by New Mexico's public policy where they are truly unambiguous and where only one premium has been charged for the coverage. *Id.* at ¶ 15. *Montano* stressed that mandatory UM/UIM stacking runs counter to the policy favoring consumer choice where possible:

> [R]equiring stacking in all cases on a take-it-or-leave-it basis would reduce the freedom of the parties to contract for less coverage and thus their freedom to decide

11

how much coverage they can afford. This could frustrate, rather than advance, the legislative intent behind the UM statute. By requiring insurers to offer UM coverage … the legislature wanted to encourage insureds to purchase such coverage. Requiring stacking for all vehicles would put the insured who owns multiple vehicles in the position of paying for all of the coverages or rejecting UM coverage altogether, rather than deciding how much coverage they can afford. This could result in some lower-income insureds who own multiple vehicles being effectively "priced out" of UM coverage.

*Id.* at ¶ 16.

## V. <u>ANALYSIS</u>

Must every New Mexico insurer, as a matter of law, structure its offer of UM insurance to match the *Montano* illustration with the same number of options as vehicles insured? More generally, is an insurer required to offer intermediate options at all? Because the New Mexico Supreme Court's decision in *Montano* does not resolve the issue, the Court turns to recent decisions of the Tenth Circuit and New Mexico Court of Appeals which have discussed *Montano* and its requirements.

Hawley's *Montano*-based argument was rejected by a panel of the Tenth Circuit in *Jaramillo*, 573 F. App'x 733. There, the insured argued that *Montano* "provides the legal foundation for the New Mexico Supreme Court's mandate that insurance carriers provide the premium costs for each available level of stacked coverage." *Id.* at 744. The Tenth Circuit, however, found *Montano* to be distinguishable from the plaintiffs' case because the insurer in *Jaramillo* permitted stacking, whereas the insurer in *Montano* prohibited it but did not obtain a valid rejection, consequently requiring the imposition of judicial stacking. *Id.* at 745. The court further rejected the plaintiffs' reliance on *Arias v. Phoenix Indem. Ins. Co.*, 2014-NMCA-027, --- P.3d ----, determining that:

> [j]ust as *Montano* was clearly predicated on the ambiguousness of anti-stacking language in a policy, *Arias* presupposed ambiguousness caused by the imposition of UM/UIM coverage on a policy. In other words, stacking in the situation

contemplated by *Arias* follows *only after* the court finds an invalid rejection of UM/UIM coverage and reads that coverage into a policy.

*Id.* at 746. Ultimately, the Tenth Circuit concluded "that *Montano* does not stand for the proposition that the Option Form could only have been valid under New Mexico law if it had specifically mentioned the concept and effect of stacking coverage." *Id.*

After *Jaramillo*, the New Mexico Court of Appeals decided *Ullman*, 2017-NMCA-071, and held that "an insurer has no duty to offer or explain stacking to a customer[.]" *Id.*, ¶ 15. Relying on *Jaramillo*'s analysis of New Mexico law, the *Ullman* court determined that "the 'maximum amount' contemplated [by New Mexico's UM/UIM statute] is simply an amount equal to the policy's liability limits[.]" *Id.* at ¶ 37. In other words, the court concluded that stacked coverage, while an option that an insurer could offer, is coverage above and beyond that which must be offered under New Mexico's insurance case law. This view was reinforced by the New Mexico Court of Appeal's recent decision in *Lueras v. GEICO General Insurance Company*, 2018-NMCA-051, 424 P.3d 665, *cert. granted* (Aug. 16, 2018). There, the plaintiffs argued, like Hawley, that GEICO's "all-or-nothing" requirement that they purchase UM/UIM coverage on each of their vehicles, or reject UM/UIM coverage on all vehicles, was contrary to *Montano*'s illustration. *See id.* at ¶ 13. The *Lueras* court addressed head-on the *Montano* illustration, explaining:

> Plaintiffs forget the context that led to the inclusion of this passage… our Supreme Court was merely explaining what an insurance company would have to do *if* it wanted to obtain an effective rejection of *stacking* by an insured. By its own terms, *Montano*'s "illustration" does not describe a mandatory requirement imposed on all insurers offering UM/UIM coverage, but rather provides a voluntary option for those insurers that do not wish to offer stacking.
>
> We conclude that *Montano* did not consider whether automobile insurers should be required to offer policy holders UM/UIM coverage on a per-vehicle basis, much less impose such a requirement…. Other than the illustration in *Montano*,

> Plaintiffs have cited to no authority supporting their contention that GEICO must offer UM/UIM coverage on a per-vehicle basis, as opposed to a per-policy basis.

*Id.* at ¶¶ 17-18 (emphasis in original). As such, the New Mexico Court of Appeals concluded that "GEICO's offer of UM/UIM coverage on a per-policy basis was not contrary to New Mexico law." *Id.* at ¶ 18.

Despite *Ullman* and *Lueras*' findings to the contrary, Hawley posits that the New Mexico Supreme Court, which has granted certiorari in both cases, will reverse course. [*See* Doc. 18, pp. 9-10]. Hawley bases his argument on Judge Attrep's special concurrence in *Lueras*, where she agreed with the result based on *Ullman*, but then stated that she had "reservations" about that decision. *See Lueras*, 2018-NMCA-051, ¶ 29. Most basically, Judge Attrep opined that *Ullman*'s reliance on *Jaramillo* was misplaced because the Tenth Circuit did not accurately apply *Montano*. *See id.*, ¶ 32 (stating that *Montano* "requires 'insurers to disclose the premium costs for each available level of stacked coverage as a means of guaranteeing that consumers can knowingly exercise their statutory rights to UM/UIM coverage.'") (quoting *Whelan*, 2014-NMSC-021, ¶ 25). Nonetheless, Judge Attrep concurred in the case because the issue was recently decided (in *Ullman*), "which now awaits decision by the Supreme Court." *Id.*, ¶ 36.

This Court is bound by the Tenth Circuit's application of *Montano* in *Jaramillo*, and takes guidance from the New Mexico Court of Appeals' decisions in *Ullman* and *Lueras*. As *Montano* dictated, upon deciding to include anti-stacking language in its policy, Farm Bureau undertook "the burden of obtaining a separate, comprehensible, and written disclaimer of stacking." *See Montano*, 2004-NMSC-020, ¶ 18. Pursuant to Section II of the Selection/Rejection Form in this case, Hawley rejected intra-policy UM stacking and instead opted for non-stacked UM coverage. [*See* Doc. 17-1, pp. 1-2]. In obtaining Hawley's rejection, Farm Bureau presented the cost of non-stacked UM coverage side-by-side with the premium amount for stacked coverage. [*Id.*]. Hawley

has not argued, nor could he, that he paid a separate premium for stacked UM coverage. Therefore, under *Montano* and the cases interpreting it, Hawley's rejection of stacking was permissible, and he is not entitled to stack his coverage.

In reaching this conclusion the Court rejects Hawley's position that Farm Bureau was required to present a menu of all levels of stacked coverage that might have been applicable to the six vehicles he insured under the Policy. This conclusion rests on the premise recognized by *Montano*: "that UM personal injury coverage does not follow the automobile." 2004-NMSC-020, ¶ 9. Hawley's greatest ammunition against this proposition, *Arias*, [*see* Doc. 18, p. 8 ("before *Ullman* was decided, the New Mexico Court of Appeals previously agreed that, under *Montano*, 'absent the execution of a sufficient rejection of each and every possible combination of stacking, stacking is something to which the insured is entitled by default.'")], is rejected for the same reasons the Tenth Circuit found it to be distinguishable in *Jaramillo*. That is, *Arias* was a case which dealt with judicially-imposed UM/UIM coverage and the inherent ambiguity created thereby in relation to stacking. *See Jaramillo*, 573 F. App'x at 746 ("stacking in the situation contemplated by *Arias* follows *only after* the court finds an invalid rejection of UM/UIM coverage and reads that coverage into a policy."). It is undisputed that Hawley did not reject UM/UIM coverage in this case, and that Farm Bureau paid out the undisputed non-stacked UM coverage limits of $75,000.00 available under the Policy after applying an offset for the $25,000.00 paid by the tortfeasor. As such, *Arias* is distinguishable, especially in light of *Ullman* and *Lueras*.

VI) <u>**CONCLUSION**</u>

Despite its illustration suggesting the contrary, the *Montano* court made clear that UM/UIM coverage is not tied to a specific vehicle. 2004-NMSC-020, ¶ 9. As the *Lueras* court found, there is nothing in New Mexico's insurance case law that *requires* an insurer to offer stacked UM/UIM

coverage on a per-vehicle, as opposed to a per-policy, basis. Therefore, Hawley's argument that Farm Bureau violated New Mexico's public policy by failing to obtain a valid rejection of stacked coverage, is invalid.

Wherefore, Defendant Farm Bureau Property & Casualty Insurance Company's Motion for Partial Summary Judgment [Doc. 17], in which it requests that the Court grant summary judgment in its favor and dismiss Plaintiff John Hawley's Complaint with prejudice, is hereby **granted**. A Final Order pursuant to Rule 58 will be entered concurrently.

SO ORDERED.

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE
Presiding by Consent